1
2
3
4
5
6
7
8                    UNITED STATES DISTRICT COURT

9                FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   SALVADOR CORDOVA PIMENTEL, et        No.  2:17-cv-0931 WBS AC
     al.,
12
                    Plaintiffs,
13                                         ORDER
            v.
14
     CITY OF STOCKTON, et al.,
15
                    Defendants.
16

17

18          This matter is before the court on two separate discovery motions brought by defendant

19   City of Stockton ("the City") in this excessive force case.  First, the City moves to compel

20   plaintiffs to sign an authorization so that it can obtain information on the decedent's social

21   security card.  ECF No. 17.  Second, the City moves for a protective order regarding the

22   production of various prior complaints against the officers involved in the deadly use of force

23   giving rise to this case.  ECF No. 19.  These discovery motions were referred to the magistrate

24   judge pursuant to E.D. Cal. R. 302(c)(1).  Plaintiffs and defendants, through counsel, attended a

25   hearing on September 12, 2018 at 10:00 a.m.  ECF No. 35.  For the reasons stated below, the

26   court DENIES both motions.

27   ////

28   ////

                                                1

# I.     Relevant Background

Plaintiffs are pursuing civil rights claims under 42 U.S.C. § 1938, a claim of battery, and for violations of Cal. Civ. Code § 52.1, all arising from the death of Abelino Cordova-Cuevas ("Abelino"). ECF No. 1-1 at 7-8. As stated in the Complaint, Abelino was driving in Stockton on March 7, 2015, when he was pulled over by Stockton police officers Matthew Garlick and/or Officer Lucas Woodward. Id. at 11. The officers claimed the stop was for erratic driving. Id. Plaintiffs allege Abelino repeatedly told the officers "I have no weapons," kept his hands in the air, and lifted his shirt. Id.

At roughly the same time, another Stockton police officer arrived on a motorcycle and parked across the street from where Abelino was standing. Id. Witnesses heard this officer trigger his Taser, which made a distinctive clicking noise. Id. Abelino began to run around the corner, with another police SUV pulling up where the motorcycle had stopped. Id. The officer in the SUV followed Abelino and the other officers. Id. Officers Garlick and Woodward, along with the other officers, cornered Abelino at a nearby business. Id. Plaintiffs allege that surveillance video shows Abelino walking backwards with his hands up before being forcibly brought to the ground by Stockton police officers. Id. Additional police vehicles and motorcycles began arriving on the scene. Id.

Plaintiffs allege that surveillance video shows Abelino laying on the ground while Stockton officers use a chokehold or carotid restraint, and other unnecessary force on an unarmed man who had surrendered. Id. at 12. Abelino became unresponsive and medical responders arrived at the scene. Id. Records from medical responders and the Stockton Fire Department indicate that Abelino was in full cardiac arrest upon arrival with Taser wires sticking out of him. Id. Plaintiffs allege the Fire Department records further indicate Abelino had trauma to his head and face, and hospital records indicate abrasions to his right shoulder and right arm, a hematoma and left parietal abrasion to his scalp. Id. Emergency personnel transported Abelino to San Joaquin General Hospital where he was pronounced dead shortly after arrival. Id.

Plaintiffs Salvador Cordova Pimentel and Maria Cuevas Dominguez are the surviving parents of Abelino. ECF No. 1-1 at 8-9. They are each residents of Mexico. Id. They bring this

case in their individual capacities and as successor-in-interest to the claims of Abelino Cordova-Cuevas. Id. Plaintiffs initially sought damages for noneconomic damages (loss of love, companionship, comfort, etc.), as well as recoverable wrongful death economic damages (loss of economic support, etc.). Id. at 21. On August 22, 2018, plaintiffs withdrew their claim for economic damages. ECF No. 25.

## II.    Motion to Compel

The City asks the court to compel plaintiffs to sign an authorization so that defendants can verify whether Abelino had a specific social security card (ECF No. 27).

A.  Standard on Motion to Compel

The scope of discovery in federal cases is governed by Federal Rule of Civil Procedure 26(b)(1). The current Rule states:

> Unless otherwise limited by court order, the scope of discovery is as follows: Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

Fed. R. Civ. P. 26(b)(1). Evidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action. Fed. R. Evid. 401. Relevancy to the subject matter of the litigation "has been construed broadly to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case." Oppenheimer Fund, Inc. v. Sanders, 437 U.S. 340, 351 (1978). Relevance, however, does not establish discoverability; in 2015, a proportionality requirement was added to Rule 26. Under the amended Rule 26, relevance alone will not justify discovery; discovery must also be proportional to the needs of the case.

A party seeking to compel discovery has the initial burden to establish that its request is

proper under Rule 26(b)(1).  If the request is proper, the party resisting discovery has the burden

of showing why discovery was denied; they must clarify and support their objections.

Blankenship v. Hearst Corp., 519 F.2d 418, 429 (9th Cir.1975).  General or boilerplate objections,

without explanation, are not prohibited but are insufficient as a sole basis for an objection or

privilege claim.  Burlington Northern & Santa Fe Ry. v. United States Dist. Court, 408 F.3d 1142,

1149 (9th Cir.2005).

### B.  Plaintiff's Social Security Information is Not Relevant

Defendants argue that Abelino's social security information is relevant to noneconomic

damages.  The City believes that Abelino used a false social security number to obtain

employment at El Dorado Market, where he worked prior to his death.  ECF No. 27 at 3.  After

issuing a subpoena to the Social Security Administration, the City learned that plaintiffs'

authorization was required before any records could be produced.  Id. at 2.  Plaintiffs refuse to

sign an authorization, prompting this motion.  Id. at 3.  Defendants argue that they are entitled to

Abelino's social security information because, if he did provide a false social security number to

his employer, it was a federal crime that could have resulted in a significant period of

imprisonment.  Id. at 4.  This, they argue, bears on plaintiffs' non-economic damages because,

had the decedent been eventually imprisoned, plaintiffs would have been deprived of his love,

companionship, comfort, care, protection, and moral support.  Id.  Plaintiffs counter that,

especially in the absence of any economic damages claim, the issue is simply not relevant to this

case.  ECF No. 27 at 9.  Plaintiffs contend that defendants seek this information only to utilize it

for inflammatory purposes.  Id.[1]

As discussed above, Rule 26 allows for all discovery "that is relevant to any party's claim

or defense and proportional to the needs of the case[.]"  Although the scope of discovery is broad,

it is not unlimited and must be reasonably calculated to lead to admissible evidence.  Epstein v.

MCA, Inc., 54 F.3d 1422, 1423 (9th Cir. 1995).  Defendants' theory of relevance depends entirely

---

[1]  Plaintiffs also contend that release of social security numbers would violate privacy.  Id.  This
concern would be adequately addressed by a protective order.  Because the court finds that the
information is not relevant, however, that issue is moot.

on a chain of speculation. Abelino's use of a false social security card could only make it more or less probable that his parents have been deprived of his love, companionship, comfort, care, protection, and moral support if (1) that use likely would have been discovered; (2) Abelino likely would have been criminally prosecuted rather than summarily deported as a result; and (3) Abelino would have ultimately been imprisoned.

Although the standard for discovery is broad, it does have "ultimate and necessary boundaries." Hickman v. Taylor, 329 U.S. 495, 507 (1947). Defendants in a wrongful death case may not scour the decedent's life for evidence of illegal conduct on the theory that *if* the decedent had been caught, and *if* the decedent had been prosecuted, and convicted, and punished to the maximum extent of the law, *then* his survivors' claim for damages might be impacted. This is not a case in which the decedent was incarcerated or under criminal investigation, such that potential future incarceration would be relevant to non-economic damages. Accordingly, defendants' motion to compel is denied.

### III.    Motion for Protective Order

The City asks for a protective order regarding plaintiff's requests for production ("RFP") 33 and 34. RFP 33 seeks all documents that refer or relate to citizen and/or internal complaints against the defendant officers involving the use of force, dishonesty, unlawful detention, false arrest, planting evidence, false statements, or false testimony. RFP 34 seeks documents pertaining to the investigation, disposition of, and discipline imposed as a result of any complaint responsive to RFP 33.

A. Standard on Motion for Protective Order

Under the Federal Rules of Civil Procedure, the method available to limit the breadth or use of a discovery request is a motion for a protective order under Fed. R. Civ. P. 26(c). This rule states in relevant part:

> A party or any person from whom discovery is sought may move for a protective order in the court where the action is pending[.] The motion must include a certification that the movant has in good faith conferred or attempted to confer with other affected parties in an effort to resolve the dispute without court action. The court may, for good cause, issue an order to protect a party or person from

annoyance, embarrassment, oppression, or undue burden or expense[.]

Fed. R. Civ. P. 26(c). Options available to the court include, in part, "forbidding the disclosure or discovery; [ ] forbidding inquiry into certain matters, or limiting the scope of disclosure or discovery to certain matters." Id. District courts have broad discretion to determine whether a protective order is appropriate and, if so, what degree of protection is warranted. Seattle Times Co. v. Rhinehart, 467 U.S. 20, 36 (1984); see also Phillips ex rel. Estates of Byrd v. Gen. Motors Corp., 307 F.3d 1206, 1211–12 (9th Cir. 2002). The party seeking to limit discovery has the burden of proving "good cause," which requires a showing "that specific prejudice or harm will result" if the protective order is not granted. In re Roman Catholic Archbishop of Portland, 661 F.3d 417, 424 (9th Cir. 2011) (citing Foltz v. State Farm Mut. Auto. Ins. Co., 331 F.3d 1122, 1130 (9th Cir. 2003)). As discussed above, the scope of discovery in federal cases is governed by Federal Rule of Civil Procedure 26.

B. The City Must Produce in Response to RFPs 33 and 34

The City's request for a protective order must be denied because the documents sought by RFPs 33 and 34 are directly relevant to plaintiffs' case, and any privacy concerns are outweighed by the interests of justice. Courts in the Ninth Circuit have routinely held that personnel files are discoverable in federal cases, despite claims of privilege. Garrett v. City & County of San Francisco, 818 F.2d 1515, 1519, n.6 (9th Cir. 1987) ("This court has held that personnel files are discoverable in federal question cases, including Title VII actions, despite claims of privilege."); Soto v. City of Concord, 162 F.R.D. 603, 615 (N.D. Cal. 1995) (personnel files of defendant-officers in excessive force cases contain a variety of relevant information, and are discoverable over claims of privilege); Myles v. City of San Diego, No. 15CV1985-BEN (BLM), 2016 WL 2343914, at *12 (S.D. Cal. May 4, 2016) ("citizen complaints against law enforcement involving excessive force are relevant in civil rights cases[.]").

The City provides the court no reason to deviate from the usual rule that records of complaints such as those requested by RFP 33 and 34 are discoverable. With respect to the City's contention that the RFPs are overbroad because they reach complaints that are not directly related

to excessive use of force, the court is persuaded by plaintiffs' argument that other complaints may bear on the credibility of the officers. The City's assertion that only one such non-excessive use of force complaint exists against the defendant officers (ECF No. 28 at 9) only goes to underscore the point that a full production in response to the RFPs will not be unduly burdensome on the City.

As to the City's contention that disclosure will violate privacy rights, the court is not persuaded. It is true that federal courts recognize a constitutionally-based right of privacy that may be asserted in response to discovery requests. Soto, 162 F.R.D. at 616. However, privacy objections are subject to balancing the need for the requested information against the asserted privacy right. Id. "In the context of the disclosure of police files, courts have recognized that privacy rights are not inconsequential. . . . However, these privacy interests must be balanced against the great weight afforded to federal law in civil rights cases against police departments." Id. "Current case law suggests the privacy interests police officers have in their personnel files do not outweigh plaintiff's interests in civil rights cases." Dowell v. Griffin, 275 F.R.D. 613, 617 (S.D. Cal. 2011) (citing Soto, 162 F.R.D. at 617; Hampton v. City of San Diego, 147 F.R.D. 227, 230 (S.D.Cal.1993); Miller v. Pancucci, 141 F.R.D. 292, 301 (C.D.Cal.1992)). Further, privacy rights can be adequately protected by a stipulated protective order. For these reasons, the City's motion for a protective order as to RFPs 33 and 34 is DENIED.

## IV. Conclusion

The City's motion to compel (ECF No. 17) is DENIED and the motion for a protective order (ECF No. 19) is likewise DENIED. The parties are further ORDERED to submit a stipulated protective order to the court for approval within 10 days of this order. Production subject to this order shall be made following the court's entry of the stipulated protective order.

IT IS SO ORDERED.

DATED: September 19, 2018

ALLISON CLAIRE
UNITED STATES MAGISTRATE JUDGE